In re Robert H. POWELL, Jr. &
Emma Lou Ann Powell d/b/a
Circle P Farms, Debtors.

**Bankruptcy 4–95–2181.**

United States Bankruptcy Court,
D. Minnesota.

Sept. 27, 1995.

Scott J. Otero–Strouts, Minneapolis, MN, for debtors.

Michael Fadlovich, Office of the United States Trustee, Minneapolis, MN, for U.S. Trustee.

Peter B. Stein, Stein & Moore, St. Paul, MN, Roy L. Prange, Quarles & Brady, Madison, WI, for Firstar Bank Madison.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on September 13, 1995, on the motion of Firstar Bank Madison, N.A. ("Bank") to compel the Debtors, Robert H. Powell, Jr. and Emma Lou Ann Powell ("Debtors"), to return property to the bankruptcy estate, for an accounting, and to establish compensation for the Debtors. Appearances were noted in the record. The Court, having heard the arguments of counsel, studied the papers, and being duly advised in the premises, for the reasons stated, denies the motion.

### FACTS

1. Debtors filed this bankruptcy case under Chapter 11 of the Bankruptcy Code on April 21, 1995.[1] Since the bankruptcy filing, Debtors have been operating as debtors-in-possession.

2. Debtors own a 700–acre potato farm located in Adams County, Wisconsin. In addition to the income Debtors derive from the farming operation, they each earn income in the form of wages from their employment. Robert H. Powell, Jr. is an airline pilot employed by Sun Country Airlines and Emma Lou Ann Powell is an airline hostess employed by FL Aviation Corporation. Debtors have three children.

3. The Bank is the holder of a claim which, as of the petition date, is in excess of $2,300,000.00. The secured portion of the claim is primarily based on liens on real and personal property relating to the potato farm. The Bank's security interest also extends to accounts receivable. The Bank is undersecured. Although the undersecured portion of the Bank's claim has not been

---

1. The amount and constitution of the debtors' prepetition indebtedness in the instant case, effectively precludes them from seeking relief under Chapter 13. *See* 11 U.S.C. § 109(e).

established, the Bank is undisputedly the largest unsecured creditor in the case.

4. There is no active unsecured creditors' committee.

5. In the months of May, June, and July of 1995, Debtors received farm income in the amount of $105,098.00 and off-farm income in the form of wages and business travel reimbursement totalling $54,959.78. Postpetition, Debtors have expended $51,142.45 in payments to various creditors (such as the mortgage holder on the family home, car and insurance payments, etc.), for general living expenses, and a college expense payment in the amount of $8,000.00.

6. The Bank, after failing in its attempt to obtain from Debtors a more detailed itemization or explanation of their postpetition expenditures, brought the instant motion to compel Debtors to account for and return to the bankruptcy estate payments made postpetition, the expenditure of which emanated *solely* from their wages, and for an order establishing reasonable compensation pursuant to § 503(b)(1)(A) of the Bankruptcy Code. The crux of the Bank's view is that: "all post-petition income whether derived from farming operations or from separate occupations [of the individual debtors] is property of the estate [pursuant to § 541(a)(7)]; the Debtors are accountable for it; the income must be preserved for the benefit of creditors; and it may not be spent without [prior] authorization by the Bankruptcy Court."

7. Debtors, by contrast, contend that their postpetition wages are not property of the bankruptcy estate but, rather, are personal property in that the wages represent "earnings from services performed by an individual debtor after the commencement of the case" within the meaning of Code § 541(a)(6).

## DISCUSSION

■ The commencement of a case under Bankruptcy Code §§ 301, 302, and 303 creates an estate which is comprised of virtually all legal or equitable interests of the debtor in property wherever located. 11 U.S.C. § 541(a). Section 541 delineates what prop-

erty will pass to the estate and applies to *each* chapter of the Code that an individual is eligible under unless the specific chapter invoked dictates a contrary result. *Id.* § 103(a). The scope of the estate is broad and all encompassing. *Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983); *Whetzal v. Alderson,* 32 F.3d 1302, 1303 (8th Cir.1994). *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868, 6322, 6323. As such, any exception or exclusion from property of the estate must be construed narrowly.

■ Although the scope of the estate is all inclusive, the express wording of § 541(a) limits the composition of the estate to those property interests the debtor holds as of the date the bankruptcy petition is filed. However, a number of Code sections expand or augment the scope of the estate to bring within its penumbra those postpetition accruals or accessions which are derived from property of the estate such as: "[p]roceeds, product, offspring, rents or profits." 11 U.S.C. § 541(a)(6). Similarly, "[a]ny interest in property that the *estate acquires* after the commencement of the case" is a properly includable in the pool of assets which comprise the estate. *Id.* § 541(a)(7) (emphasis added). These sections, which provide for the inclusion of postpetition accruals or accessions as property of the estate, are subject to the caveat that postpetition *"earnings from services performed by an individual debtor after the commencement of the case "* are excepted therefrom. *Id.* § 541(a)(6) (emphasis added). This exclusion from the bankruptcy estate is embodied in § 541(a)(6) and is commonly referred to in bankruptcy parlance as the "earnings exception." *See generally* Susan Gummow, *Earnings Exception,* 98 Com.L.J. 379 (1993); George R. Pitts, *Rights to Future Payment As Property of the Estate Under Section 541 of the Bankruptcy Code,* 64 Am.Bankr.L.J. 61 (1990).

■ There can be little room for doubt that the earnings of a *corporate* debtor in Chapter 11 constitute property of the bankruptcy estate and cannot, without prior court approval, be expended other than in the ordinary course of business. *See* 11 U.S.C. § 363. The inquiry with respect to the earnings of an *individual* debtor is not as easily resolved.

■ The legal issue to be decided in the instant case is whether the postpetition, preconfirmation earnings of *individual* debtors in a Chapter 11 case that have been received in the form of *wages* from employment belong to the bankruptcy estate or to the individual debtors. This issue has produced a division in the case law. The authorities addressing the issue of the interplay between § 541(a)(1), (a)(6), (a)(7), and the scope of the earnings exception, although taking different approaches, generally fall into two camps. Those which essentially conclude that postpetition earnings of an individual debtor constitute property of the estate, *see In re Harp,* 166 B.R. 740 (Bankr.N.D.Ala.1993); *In re Herberman,* 122 B.R. 273 (Bankr.W.D.Tex. 1990), and those which in essence conclude that postpetition earnings such as wages from outside employment fall within the scope of the earnings exception and are therefore personal property of the individual debtor and excluded from the bankruptcy estate. *See FitzSimmons v. Walsh (In re Fitzsimmons* ), 725 F.2d 1208 (9th Cir.1984); *In re Molina Y Vedia,* 150 B.R. 393 (S.D.Tex.1992); *In re Cooley,* 87 B.R. 432 (Bankr.S.D.Tex.1988). With due respect to the courts in the former line of cases, this Court finds the latter authorities to be the better reasoned decisions and the most satisfactory for resolving the legal issue presented in light of the facts of this case.

In the 1991 decision of *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), the United States Supreme Court, applying a plain meaning analysis, definitively resolved in the affirmative the issue of whether an individual consumer debtor, who is not engaged in business, qualified for relief under Chapter 11. As such, an individual debtor may voluntarily file for relief under Chapter 11 *or* can potentially be subjected to an involuntary petition under either Chapter 7 or Chapter 11. 11 U.S.C. § 303(a). *Compare id.* § 1112(a)(2) (indicating that a debtor may not convert the case as a matter of right to Chapter 7 if the case was originally commenced as an involuntary proceeding under Chapter 11), *with id.* §§ 1208, 1307 (affording Chapter 12 and Chapter 13 debtors with an absolute right to dismiss or convert to a case under Chapter 7). Chapter 13, by contrast, is completely voluntary:

> Congress in drafting Section 541 sought to avoid any potential conflict with the Thirteenth Amendment. Congress expressed its concern with the Thirteenth Amendment in the following passage:
>
>> As under current law, Chapter 13 is completely voluntary. This committee firmly rejected the idea of mandatory or involuntary Chapter XIII in the 90th Congress. The Thirteenth Amendment prohibits involuntary servitude. *Though it has never been tested in the wage earner plan context;* it has been suggested that a mandatory Chapter 13 by forcing an individual to work for creditors would violate this prohibition. (emphasis added).

*In re Molina Y Vedia,* 150 B.R. 393, 399 (S.D.Tex.1992) (quoting the House and Senate Reports). The Supreme Court in *Toibb,* responding to the argument that an individual consumer debtor should not be eligible for Chapter 11 relief because of the potential for being subjected to an involuntary proceeding pursuant to § 303, pointed out a critical distinction with respect to the earnings of an individual debtor under Chapter 13 and Chapter 11:

> [T]he argument overlooks Congress' primary concern about a debtor's [sic] being forced into bankruptcy under Chapter 13: that such a debtor, whose future wages are not exempt from the bankruptcy estate, § 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition. *Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13*

*debtor is not relevant to a Chapter 11 reorganization.*

*Toibb v. Radloff,* 501 U.S. 157, 165, 111 S.Ct. 2197, 2202, 115 L.Ed.2d 145 (1991) (emphasis added and citation omitted). Indeed, both Chapter 12 and Chapter 13 remove the applicability of the earnings exception embodied in § 541(a)(6) from the purview of the bankruptcy estate in those chapters by expressly *including* postpetition earnings within the definitional fabric of property of the estate. *See* 11 U.S.C. §§ 1207(a)(2), 1306(a)(2). The inclusive language in Chapters 12 and 13 is notably absent from Chapter 11 and is set forth in those Chapters in language that is virtually identical to that setting forth the earnings exception in § 541(a)(6).

The disputed postpetition earnings in this case are not generated from fixed assets or other invested capital. Rather, the genesis of those earnings generated after the commencement of the case are derived exclusively from services performed by the individual debtors in their capacities as employees. The Bank argues that a plain reading of § 541(a)(6) compels the conclusion that the exception is only applicable to the extent that those earnings can be fairly categorized as derived from products, proceeds, rents, or profits of property of the estate. As such, the Bank essentially contends that the earnings exception is wholly inapplicable to the wages of consumer debtors in a Chapter 11 case despite the fact that the postpetition earnings may be derived exclusively from the services performed by an individual debtor. This Court disagrees with the logical conclusion inherent in the Bank's argument.

 Legislative enactments must be read and applied in a common sense manner which effectuates both the spirit as well as the letter of the law. *See generally Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.) (L. Hand, J.), *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945) (opining that "it is one of the surest indexes of a mature and developed jurisprudence ... to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."). As previously outlined, the earnings exception contained in § 541(a)(6) is the man-

ifested expression of the desire by Congress to avoid any potential conflict with the Thirteenth Amendment's prohibition against involuntary servitude. *In re Molina Y Vedia,* 150 B.R. 393, 399 (S.D.Tex.1992). Nowhere is the threat of impinging upon the protection afforded by the Thirteenth Amendment to the United States Constitution more real than in the case such as this where a creditor is attempting to harness the postpetition wages of individual debtors in a Chapter 11 proceeding. It would indeed seem anomalous to conclude that individual debtors in a Chapter 11 proceeding who are engaged in a business enterprise, such as a sole proprietorship or partnership, and derive their earnings by employing assets unquestionably belonging to the estate may, as the Bank suggests, qualify for the earnings exception since any income so derived represents "proceeds" or "profits" from property of the estate within the meaning of § 541(a)(6), while the earnings exception is wholly inapplicable to individual consumer debtors such as these Debtors whose earnings are derived from wages for services performed after the commencement of the case.

The Bank in this case asserts that Debtors, as debtors-in-possession, have fiduciary responsibilities to unsecured creditors and other parties in interest which require them to act in the capacity of bankruptcy trustee. *See* 11 U.S.C. §§ 1106, 1107(a). The Bank contends that in their capacity of fiduciaries, the Debtors have an affirmative obligation to ensure that *all* monies, irrespective of its source, flowing through their hands are used to benefit creditors and other parties in interest. Section 503(b)(1)(A) would, according to the Bank, permit the Debtors to obtain compensation for the actual and necessary costs of preserving the estate "including wages, salaries or commissions for services rendered after the commencement of the case." *Id.* § 503(b)(1)(A).

 The Bank's reliance on the fiduciary obligation of a Chapter 11 debtor-in-possession to the bankruptcy estate to support its contention that postpetition wages earned by the Debtors constitute property of the estate and should, with the exception of that amount which after court and creditor scruti-

ny can be reasonably carved out by virtue of § 503(b)(1)(A), be available for distribution to creditors begs the question. "Property of the estate is not determined by the debtor-in-possession's fiduciary obligations to the estate; rather, the scope of the debtor-in-possession's fiduciary obligation is determined by the property constituting the estate. Irrefutably, the debtor-in-possession owes no obligation to the estate for non-estate property." *In re Molina Y Vedia,* 150 B.R. 393, 400 (Bankr.S.D.Tex.1992).

It is also significant to note that individual debtors and their bankruptcy estates are under the law separate entities and that not all interests in property acquired postpetition by individual debtors constitute property of the estate. *Koch v. Myrvold (In re Myrvold),* 44 B.R. 202, 204 (Bankr. D.Minn.1984), *aff'd,* 784 F.2d 862 (8th Cir. 1986). Indeed, Internal Revenue Code § 1398 explicitly provides that a separate taxable entity is created when an "individual" files a petition for relief under either Chapter 7 or Chapter 11 of the Bankruptcy Code. 26 U.S.C. § 1398. As such, unlike debtors that are corporations or partnerships, or cases commenced under Chapter 12 or 13, both an individual debtor and the bankruptcy estate in Chapter 11 will separately realize, compute, and report their respective tax obligations. The tax liability which results from the economic activity of a Chapter 7 or 11 estate will therefore generally be imposed solely upon the estate and thereby not impinge upon the fresh start the Code affords deserving individual debtors. By the same token, the separate entity concept mandates that to the extent that an individual debtor derives income from wages earned postpetition which is independent of that derived from the estate in general, the individual bears personal responsibilities in connection with the income so derived. To view the earnings exception codified at § 541(a)(6) as excluding from the Chapter 11 estate *only that portion* of an individual debtor's future wages that has been approved by the bankruptcy court in the first instance after scrutiny under § 503(b)(1)(A), is not only inconsis-

tent with the dichotomy mandated by the separate entity concept but threatens the fresh start of individuals who are generally in immediate need of their wages in order to merely survive.

The Assistant United States Trustee, who appeared in the case, contends that should the postpetition wages of individual debtors in general be excluded from the bankruptcy estate and sheltered from administration, there will often be no assets which comprise the bankruptcy estate and no income available to satisfy creditor claims.[2] As such, the Trustee contends that Chapter 11 would frequently be "meaningless" in many cases in which the individual debtors are seeking relief under Chapter 11.

The essential purpose of Chapter 11 is to provide a plan of reorganization whereby the claims of creditors can be, at least partially, satisfied. A Chapter 11 plan must be feasible and therefore have an adequate source of funding in order to ensure that creditors who do not consent to lesser treatment are provided under the plan with at least as much as they would receive if the case were liquidated under Chapter 7. 11 U.S.C. § 1129(a)(7)(A)(ii), (a)(11). The argument advanced by the Trustee overlooks the practical reality that individual debtors will generally be required to utilize at least a portion of the very postpetition wages which are excluded from the purview of the estate by operation of § 541(a)(6) in order to fund a confirmable plan of reorganization.

In sum, the postpetition wages generated by the individual debtors from their employment in this Chapter 11 case are *not* property of the estate and may not be impounded.

Accordingly, and for reasons stated, the motion of the movant-creditor, Firstar Bank Madison, N.A., is **DENIED**.

---

**2.** The Trustee conceded that his argument has little, if any, application in the context of this case since the debtors have farm income which is includable in the bankruptcy estate.