**In re Thomas Milton HAAS and Bernice Elizabeth Haas, Debtors.**

**Bankruptcy No. 91–02118.**

United States Bankruptcy Court,
S.D. Alabama,
Southern Division.

March 6, 1996.

Lawrence B. Voit, Mobile, AL, for debtors.

William R. Sawyer, United States Attorney, Mobile, AL, Carol Koehler Ide, U.S. Department of Justice, Washington, DC, Travis M. Bedsole, Jr., U.S. Bankruptcy Administrator, Mobile, AL, for I.R.S.

Thomas P. Ollinger, Secor Bank, Mobile, AL.

## ORDER CONFIRMING PLAN OF REORGANIZATION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

The Debtors' Second Amended Plan of Reorganization, the motion of the Internal Revenue Service to alter or amend this Court's August 18, 1995 order, and for relief from the stay, and the motion of the Internal Revenue Service to dismiss this case came on for hearing on November 24, 1995 on proper notice. On that date the Debtors filed their Third Amended Plan ("the Plan") to meet the objections of certain creditors. Appearances were as noted in the record. The Court has considered the testimony, exhibits, arguments of counsel, briefs, and the entire record in this case, and based on the above enters the following findings of fact, conclusions of law, and order:

*Findings of Fact*

1. Thomas M. Haas is a practicing lawyer in Mobile, Alabama. He is a sole practitioner whose law practice is almost exclusively devoted to criminal defense. He is 68 years old, and received his law degree from the University of Alabama School of Law in 1952. He has been engaged in the private practice of law for 37 years. He has no associates working for him on a regular basis. He conducts his law practice in rented offices located at 258 State Street, Mobile, Alabama.

2. Bernice Elizabeth Haas is the wife of Thomas M. Haas, and works fulltime in her husband's law office performing clerical, secretarial and administrative work. She receives an annual salary of approximately $25,000. The only other fulltime employee in the law office is an experienced legal assistant who receives an annual salary of approximately $36,000.

3. Thomas M. Haas no source of income other than fees received from clients for his professional legal services.

4. Beginning in 1978 the Internal Revenue Service filed notices of federal tax liens for unpaid joint federal income taxes and federal employment taxes for various tax periods.

5. The Debtors jointly own a homeplace located at 3957 Scenic Drive, Mobile, Alabama. In 1979 the Debtors refinanced their homeplace with Secor Bank and paid approx-

imately $100,000 to the Internal Revenue Service toward their tax liabilities.

6. In October 1987 Thomas M. Haas pled guilty to a federal misdemeanor charge of willfully failing to pay income tax liabilities for 1980 through 1982, and employment taxes for 1984. He was sentenced to a one-year prison term (suspended) and was placed on five years probation. Certain conditions of his probation were that he remain current in his payment of future state and federal taxes, and that he make monthly payments to the Internal Revenue Service equal to twenty-five percent of his monthly net income to be applied as determined by the IRS. He complied with the requirements of his probation, which terminated in October 1992.

7. In September 1991 the Internal Revenue Service seized the Debtors' homeplace and advertised its sale for the payment of unpaid tax liabilities.

8. The Debtors filed a joint voluntary petition under Chapter 11 of the Bankruptcy Code in this Court on October 7, 1991.

9. On the petition date the Debtors owned the following assets:

| Assets | Value |
| --- | --- |
| Homeplace | $225,000 |
| Cash in bank accounts | 4,027 |
| Household furniture, appliances, pictures, books & clothing | 3,385 |
| Life insurance policies | 0 |
| Accounts receivable | 21,736 |
| 1972 Volkswagen | 600 |
| 1985 Cadillac | 2,500 |
| Office equipment, furnishings & supplies | 1,850 |
| Total | $259,098 |

10. On the petition date the Debtors had the following liabilities:

A. Federal income, withholding and Social Security (Form 941) and unemployment (Form 940) taxes totalling $685,276.45.[1] Of this amount $68,164.22 consists of non-dischargeable employment taxes, including interest and penalties. The balance is dischargeable income taxes, including interest and penalties. Virtually all of the tax debt is secured by notices of federal tax liens filed between 1978 and 1991.

B. The U.S. Small Business Administration holds a mortgage on the Debtors' homeplace recorded in 1980 which secures a debt of approximately $13,000.

C. The Secor Bank[2] holds a mortgage on the Debtors' homeplace which secures a debt of approximately $140,000.

D. The Mobile County Revenue Commissioner holds a pre-petition claim for ad valorem taxes on the Debtors' homeplace for 1991 in the sum of $1,104.11.[3]

E. The Alabama Department of Revenue holds a pre-petition income tax claim for $973.15, which claim is secured by a recorded tax lien.

F. Principal Financial Group holds a priority claim for $658.79 in connection with an employee benefit program for health insurance.

G. General unsecured creditors hold claims totalling approximately $100,000.

11. This Chapter 11 case has generated litigation resulting in two appeals. In the first, the U.S. Court of Appeals for the Eleventh Circuit held that the federal tax liens prime the Secor Bank mortgage as a result of Secor's inadvertent recordation of a mortgage cancellation. *In re Haas*, 31 F.3d 1081 (11th Cir.1994), *cert. denied sub nom. Regions Bank of Louisiana v. Internal Reve-*

---

1. Based on the amended proof of claim filed by the Internal Revenue Service, and which includes a claim for $3,981.78 for withholding-FICA taxes for the quarter ending September 30, 1991. This portion of the claim is disputed by the Debtors on the grounds that the claim has in fact been paid.

2. Secor's name was changed to Regions Bank during the Chapter 11 case, but it is referred to as Secor herein.

3. During the course of this Chapter 11 case the post-petition ad valorem taxes have accrued as follows:

| | |
| --- | --- |
| 1992 | $1,108.26 |
| 1993 | 1,111.32 |
| 1994 | 1,379.12 |
| 1995 | 1,398.69 |

*nue Service,* —— U.S. ——, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995). In the second appeal the Eleventh Circuit held that the federal income tax liabilities of Debtor Thomas M. Haas are dischargeable. *In re Haas,* 48 F.3d 1153 (11th Cir.1995). By stipulation this Court determined that Mrs. Haas' federal income tax liabilities are discharge able.

12. In January 1992 the Internal Revenue Service moved for relief from the automatic stay to proceed to sell the Debtors' homeplace. The Court denied this motion. After remand of the lien priority adversary proceeding, the Court entered an order on August 18, 1995 which inadvertently stated incorrectly that "Secor Bank ... has a secured first priority mortgage." The order again denied the motion for relief from stay. The Internal Revenue Service then moved to alter or amend the August 18, 1995 order so as to correctly reflect the decision on appeal that the federal tax liens prime the Secor mortgage with respect to the Debtors' homeplace, and for relief from the stay. The August 18, 1995 order should be amended so as to state that the federal tax liens have a first priority lien position on the homeplace with respect to the Secor mortgage lien. Based on the facts and conclusions in this order, and because the Court is confirming the Plan, the motions of the Internal Revenue Service for relief from stay and to dismiss this case should be denied.

13. Since August 1992 the Debtors have paid $1,651 per month into a special interest-bearing debtor-in-possession bank account (the "escrow account"). This payment was calculated by taking $225,000, which is the agreed value of the homeplace, and amortizing this amount at 8% over a 30–year term. The funds paid into this account were for the purpose of servicing the secured debt on the Debtors' homeplace when the lien priority issues were finally decided. The sole source of the funds deposited to the escrow account was the Debtors' post-petition earnings. As of the confirmation hearing the escrow account had a balance of approximately $64,000.

14. In addition, the Debtors have another special debtor-in-possession bank account with a balance of $7,600 representing the proceeds of pre-petition accounts receivable (the "receivables account").

15. The Debtors filed their Second Amended Plan and Disclosure Statement dated October 17, 1995. The Disclosure Statement was approved and a confirmation hearing was noticed for November 24, 1995. In order to address objections filed by several creditors, the Debtors filed their Third Amended Plan ("the Plan") on November 24, 1995.

16. The Plan proposes to bifurcate the claim of the Internal Revenue Service into secured and unsecured portions. The secured portion is treated in Class 1 of the Plan, which provides that the secured tax claims shall be allowed in the sum of $259,000. This is the total value of the Debtors' property subject to the federal tax liens, and consists of the homeplace valued at $225,000, and personal property valued at $34,000. The $259,000 secured claim includes non-dischargeable employment taxes of $68,164.22, and dischargeable income taxes of $190,835.78. On the effective date, the funds then on deposit in the two special debtor-in-possession accounts, consisting of $64,000 in the escrow account and $7,600 in the receivables account as of the date of the confirmation hearing, are to be paid to the Internal Revenue Service toward satisfaction of the non-dischargeable employment tax component of the secured claim, and then to the oldest dischargeable income tax component of the secured claim. The remaining balance of the secured claim, which will be approximately $183,400, shall be restructured and paid on a 30–year amortization schedule with interest at 8% per annum in monthly payments of $1,345.72. The Internal Revenue Service shall retain its tax liens on the Debtors' homeplace and personalty owned on the petition date until the secured claim is paid in full in accordance with the Plan, at which time all tax liens shall be cancelled and released. The Court finds that under the Plan's treatment of the secured claim of the

Internal Revenue Service, this creditor will receive deferred cash payments having a value, as of the effective date, of at least the value of the property which secures the claim.

17. The Plan provides in Class 2 that the mortgage lien held by the SBA, which secures a debt of approximately $13,000, shall be restructured and paid on a 30–year amortization schedule with interest at 8% per annum in payments of $96 per month, with the SBA retaining its mortgage lien on the homeplace.

18. The Plan provides in Class 3 that the secured claim of Secor Bank shall be paid in monthly payments of $96 per month for 30 years beginning on the effective date, with Secor retaining its mortgage lien on the homeplace.

19. Both the SBA and Secor mortgage liens are subordinate to the tax liens held by the Internal Revenue Service on the Debtors' homeplace; however, the Plan makes no determination and specifically reserves the issue of the lien priorities as between Secor and the SBA.

20. The Plan proposes in Class 8 to pay the priority employee benefit claim of Principal Financial Group of $658.79 in full on the effective date.

21. With respect to the claims of the Mobile County Revenue Commissioner for ad valorem taxes on the Debtors' homeplace and personalty, the Plan reflects in Class 4 the following payment agreement between the parties:

| | |
|---|---|
| On effective date | $2,502.80 |
| 1 year from effective date | 2,219.58 |
| 2 years from effective date | 1,379.12 |

In addition the Debtors shall waive the applicable statute of limitations under Alabama law with respect to collection of these ad valorem taxes.

22. The Plan provides in Class 5 for the payment of the priority Alabama income tax claim of $973.15 in six annual installments with interest beginning on the effective date.

23. The Plan separately classifies the unsecured portion of the claim of the Internal Revenue Service, consisting of dischargeable federal income taxes of approximately $500,000, and proposes in Class 6 to pay a two percent dividend over five years in quarterly payments beginning on the effective date.

24. The Plan separately classifies the holders of all other unsecured claims and proposes in Class 7 to pay these creditors a two percent dividend over five years in quarterly payments beginning on the effective date.

25. The Plan provides that the Debtors shall retain their homeplace and their personalty, all of which were claimed by the Debtors in their bankruptcy schedules as exempt under Alabama law. No creditor or party-in-interest filed an objection to the Debtors' claim of exemptions.

26. All payments provided under the Plan, except the payment to the Internal Revenue Service of the funds in the debtor-in-possession account containing the proceeds of pre-petition accounts receivable, are proposed to be made from either existing or future funds derived from the Debtors' post-petition earnings.

27. The Plan defines the effective date as the 90th day after the confirmation date. In addition, the Plan provides that in the event of a default in the performance of any of the Debtors' obligations under the Plan, and the Debtors' failure to cure the default within 60 days after receipt of written notice from the holder of an allowed claim, then the claimant may pursue such remedies as are granted by law.

28. Thomas M. Haas is practicing law on a fulltime basis, and he intends to continue to do so. He is generally in good health. Based upon the average gross income and expense figures between February 1992 through August 1995, the Debtors projects the following monthly budget:

| | |
|---|---|
| Gross Monthly Income | $17,820 |
| Less: | |
| Salaries and Draw | 6,132 |
| Office Expenses (rent, utilities, licenses, supplies, books, etc.) | 3,984 |
| Current Income and Employment Taxes | 5,057 |

| | |
|---|---|
| Payment to IRS under Plan (Class 1) | 1,346 |
| Payment to SBA under Plan (Class 2) | 96 |
| Payment to Secor under Plan (Class 3) | 96 |
| Payment to IRS on Class 6 unsecured claim | 167 |
| Payment to Class 7 unsecured creditors | 33 |
| Payment to Class 4 ad valorem tax claim due 1 year from effective date | 185 |
| Payment to Class 5 claim (Alabama. Department of Revenue) | 86 |
| Total Expenses | $17,182 |
| Balance Available for Administrative Claims and Miscellaneous Expenses | $638 |

The Debtors' future income and expenses have been fairly and accurately projected, and based on these projections the Debtors should be able to make the payments called for under the Plan.

29. The Debtors have reported all of their income and expenses on a monthly and quarterly basis to the U.S. Bankruptcy Administrator in accordance with the Court's operating order entered at the beginning of this case.

30. With respect to the Debtors' Second Amended Plan dated October 17, 1995, the ballots of creditors as certified by the Debtors were as follows:

| | |
|---|---|
| Class 1—Internal Revenue Service (secured) | Reject |
| Class 2—U.S. Small Business Administration (secured) | Accepts |
| Class 3—Mobile County Revenue Commissioner | Reject |
| Class 4—Unsecured non-priority taxes (IRS) | Reject |
| Class 5—General unsecured and undersecured | See below |

| Class 5 Claimant | Claim Amount | Vote |
|---|---|---|
| Secor Bank | $140,000.00 | Reject |
| Jane Colglazier | 125,000.00 | Accept |
| William Crawford | 34,000.00 | Accept |
| Parisian Services | 390.70 | Accept |
| Internal Medicine Endocrine | 283.60 | Accept |
| Unclassified–Alabama Department of Revenue | | Reject |

31. The Third Amended Plan dated November 24, 1995 reclassifies the Secor Bank claim as a secured claim. Therefore Secor is no longer treated as an unsecured claim in the class of general unsecured creditors. Secor changed its ballot on November 24, 1995 and now accepts the Third Amended Plan. All classes of creditors under the Plan are impaired.

32. Counsel for the Mobile County Revenue Commissioner advised the Court at the confirmation hearing that based on the provisions of the Third Amended Plan, this creditor will accept the Plan and will withdraw the objection.

33. Counsel for the Debtors advised the Court at the confirmation hearing that the Alabama Department of Revenue will accept the treatment of its claim as contained in the Third Amended Plan and will withdraw the objection.

34. All classes described in the Third Amended Plan, except Class 1 (Internal Revenue Service—secured) and Class 6 (Internal Revenue Service—unsecured) accept the Third Amended Plan.

35. The Debtors have disclosed the identity of any insider that will be employed or retained by the reorganized Debtors and the nature of any compensation for such insider.

36. With respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors

were liquidated under Chapter 7 on such date.

37. Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that with respect to a claim of a kind specified in Bankruptcy Code §§ 507(a)(1) or 507(a)(2), on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

38. The Plan provides that with respect to a class of claims of a kind specified in Bankruptcy Code § 507(a)(4), each holder of a claim of such class will receive cash on the Effective Date of the Plan equal to the allowed amount of such claim.

39. At least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

40. During the course of the Debtors' Chapter 11 case, the Debtors have been depositing into the escrow account the sum of $1,651 per month. The purpose of the monthly deposits was to service the debt secured by the first lien on the Debtors' homeplace once the lien priority litigation between the Internal Revenue Service and Secor Bank was resolved. That litigation was resolved in favor of the Internal Revenue Service. The sole source of the funds in the special account, which had a balance of approximately $64,000 as of November 24, 1995, is the Debtor Thomas M. Haas' post-petition earnings from the performance of legal services. The Debtors' post-petition, pre-confirmation earnings are not included as property of the estate under Bankruptcy Code § 541(a)(6). See *In re Powell,* 187 B.R. 642 (Bankr.D.Minn.1995).

41. One component of the secured claim of the Internal Revenue Service is a claim for employment taxes, including interest and penalties, totaling $68,164.22. The employment tax claim is non-dischargeable. The Plan provides that all the funds in the escrow and receivables accounts shall be paid to the Internal Revenue Service on the effective date to be applied toward satisfaction of the employment tax claim.[4] Unless the non-dischargeable employment tax claim can be satisfied with the funds in the escrow and receivables accounts, the Debtors will have no other means to pay this claim in full. The Court finds that this treatment of the employment tax claim is necessary for the success of the Plan.

42. The funds in the escrow account thus serve three purposes for the Debtors with respect to confirmation. Payment of the funds to the Internal Revenue Service will satisfy the only non-dischargeable tax claim held by the Internal Revenue Service; the payment will reduce the secured claim held by the Internal Revenue Service which will enable the Debtors to service the remaining secured claim in monthly payments they can afford with a market rate of interest over a 30 year amortization; and the funds are "new value" because they would not otherwise be property of the estate and subject to the claims of creditors holding pre-petition dischargeable claims. The Court finds that the "new value" contribution exceeds the value of the property being retained by the Debtors under the Plan because all the property being retained has been claimed as exempt, and because there is no equity in the property since it is worth less than the debt secured by the IRS tax liens which attach to the property.

43. The Debtors have demonstrated and the Court finds that the purpose of their Chapter 11 filing was to save their homeplace from an involuntary sale by the Internal Revenue Service, to resolve the issue of the conflicting lien priority claims, to determine that their income tax liabilities are dischargeable, and to reorganize and restructure their debts so as to keep their home and continue operating the law practice. The Court finds that the principal purpose of the Plan is not avoidance of taxes.

44. The Court finds that the Debtors' Plan was filed in good faith and not by any means forbidden by law.

---

4. With continued monthly deposits of $1,651 there should be sufficient funds in the escrow account to fully satisfy the employment tax claim when payment is due on the effective date, and to apply additional funds toward the oldest secured income tax claims.

45. The Internal Revenue Service contends that the Plan is not feasible because given the age of Thomas M. Haas, it is not realistic to expect that he can complete the payments called for under the Plan. Mr. Haas testified that he is in good health and that he is presently engaged in the fulltime practice of law. He knows of no reason why he cannot continue to practice law. He is now 68 years old, and each class of creditors will receive all of the payments provided for under the Plan within five years from the effective date, with the exception of the three creditors holding liens on the Debtors' homeplace. Of those three creditors, two accepted the Plan's treatment of a 30–year payout. Only the Internal Revenue Service objects to this treatment with respect to its secured claims. While Mr. Haas cannot be expected to practice law on a fulltime basis for another 30 years, the secured claim held by the Internal Revenue Service is protected by the property itself, and in the event of a default the Internal Revenue Service has adequate remedies with respect to the property which do not make payment of its secured claim dependent on Mr. Haas' fulltime practice of law until he is a nonagenarian. The Court is satisfied that Mr. Haas intends to continue to practice law on a fulltime basis, and that his present age and health are not impediments which undermine the feasibility of the Plan. The Debtors have shown a reasonable assurance that they will comply with the Plan, and there is a reasonable prospect of success.

46. The Court finds that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors.

47. The Court finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Internal Revenue Service, which is the only class of claims which is impaired under and which has not accepted the Plan.

48. The Internal Revenue Service contends that the 30–year payout of its secured claim should not be confirmed because the statute of limitations on collection provided by I.R.C. § 6502 would expire long before the end of the 30–year payout period, thus leaving the Internal Revenue Service without any legal remedy upon the Debtors' default. Counsel for the Debtors has suggested that the Debtors are willing to waive the statute of limitations in order to preserve the right of the Internal Revenue Service to look to its collateral in the event of a future default which would otherwise be subject to a statute of limitations defense. Accordingly, as a condition of confirmation of the Plan, the Court will require the Debtors to execute all documents necessary and reasonable to waive the statute of limitations under I.R.C. § 6502 with respect to the future right of the IRS to enforce its liens on the Debtors' real and personal property now subject to those liens in the event of a default in the Debtors' obligation to the Internal Revenue Service on account of its secured claim.

49. The Internal Revenue Service objects to the notice of default provisions of the Debtors' Plan. Counsel for the Debtors has advised the Court that the Debtors are willing to modify the default provisions contained in Article 6 of the Plan such that Debtors shall have a ten day period within which to cure a default, with the ten days running from the date notice of a default is sent to the Debtors by ordinary mail, and such will be a condition of confirmation of the Debtors' Plan.

50. The Plan complies with the applicable provisions of the Bankruptcy Code. The proponents of the Plan have complied with the applicable provisions of the Bankruptcy Code. Any payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, have been approved by, or are subject to the approval of, the Court as reasonable.

### Conclusions of Law

1. As a result of the rejection of the Plan by the Internal Revenue Service, the Plan does not comply with Bankruptcy Code § 1129(a)(8). The Plan requests confirmation under Bankruptcy Code § 1129(b)(1). This section, commonly known as the "cramdown" section, requires the Court to confirm the Plan notwithstanding the requirements of

§ 1129(a)(8) if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. The Internal Revenue Service contends that the requirements of § 1129(b)(2)(B) are not met because the Plan does not propose to pay the unsecured claim of the Internal Revenue Service in full and the Debtors will retain property, thereby violating the "absolute priority rule" contained in Section 1129(b)(2)(B)(ii).

■ 2. The absolute priority rule provides that any claim or interest that is junior to the claims of the class which will be receiving less than the full amount of the claims under the plan may not receive or retain under the plan any property on account of such junior claim or interest. However, actual compliance with this requirement can be excused where the new value exception is accepted by the ruling court, and the requirements of the new value exception are met. This Court does accept the new value exception to the absolute priority rule. In order to satisfy the new value exception, the Debtors must prove that there is a contribution of new value in money or money's worth, that it is necessary to a successful reorganization, and that the new value is reasonably equivalent to the value of the interest that will be retained. *In re Woodbrook Associates,* 19 F.3d 312 (7th Cir.1994); *In re Snyder,* 967 F.2d 1126 (7th Cir.1992); *In re U.S. Truck, Inc.,* 800 F.2d 581 (6th Cir.1986); *In re SM 104 Ltd.,* 160 B.R. 202 (Bankr.S.D.Fla. 1993); *In re Creekside Landing, Ltd.,* 140 B.R. 713 (Bankr.M.D.Tenn.1992).

■ 3. Given the Debtors' projected income and expenses, and the payments to other creditors proposed under the Plan, the Court concludes that the use of the funds in the escrow account to satisfy the non-dischargeable employment tax claim held by the Internal Revenue Service meets the new value exception to the absolute priority rule because they are funds not otherwise property of the estate which are being contributed by the Debtors toward performance of the Plan, and they are money or money's worth, necessary to a successful reorganization, and

exceed the value of the interest that will be retained by the Debtors under the Plan.

4. The Debtors will be retaining nothing of value which would otherwise be available to satisfy the claims of creditors because all of their property was claimed as exempt, and no creditor filed an objection to the Debtors' claim of exemptions. Therefore all of the Debtors' assets, to the extent of their interest therein, are treated as exempt property. See *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *In re Egan,* 142 B.R. 730 (Bankr.E.D.Pa. 1992).

■ 5. The Internal Revenue Service contends that the proposal to pay the employment taxes component of the secured tax claim is objectionable because it violates the "first in time, first in right" approach, and unjustifiably subordinates senior tax liens to junior ones. *U.S. v. Energy Resources Co., Inc.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) holds that a bankruptcy court has the authority to require the Internal Revenue Service to treat tax payments made by a Chapter 11 debtor as trust fund payments where this designation is necessary for the success of a reorganization plan. Here the Debtors' payment of the funds in the escrow account to first satisfy the non-dischargeable secured employment taxes is justified because any other application of the funds to older secured income tax claims would leave non-dischargeable priority tax debts which the Debtors would not otherwise have the ability to pay in full. The older income tax debts are secured by first-priority tax liens on property which is worth more than the amount of these older tax claims, and will be paid in deferred payments. Therefore the Plan's treatment of these tax claims under the terms of Class 1 is necessary for the success of the Plan, and is satisfactory.

■ 6. The Internal Revenue Service contends that the Debtors have not filed the Plan in good faith because under the Plan the Debtors will keep all of their property and will pay only two percent of the indebtedness to the Internal Revenue Service on its unsecured, non-priority income tax claim. The Court is satisfied that the Debtors have

projected their income and expenses as reasonably accurate as possible, and that virtually all of their projected earnings will be necessary to pay their future living and business expenses, and to make the payments proposed under the Plan. While they will retain their homeplace, they will be servicing the secured debt on it in a manner which provides deferred payments to the Internal Revenue Service which have a present value equal to the value of the property which secures the debt. The Supreme Court has recognized that individual debtors are eligible for relief under Chapter 11. *Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). This case involves significant secured and unsecured debt, all of which is dealt with in the Debtors' plan of reorganization.

■ 7. The Internal Revenue Service contends that the Plan provides for impermissible "lien-stripping" under the ruling of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). *Dewsnup* was a Chapter 7 case involving a consensual lien. This is a Chapter 11 reorganization involving nonconsensual tax liens. There is authority that *Dewsnup* does not apply in Chapter 11 cases. See *In re Butler*, 139 B.R. 258 (Bankr.E.D.Okla.1992). There is also authority that *Dewsnup* does not prevent a Chapter 11 debtor from dividing an undersecured tax claim into separate secured and undersecured portions, satisfying both under a confirmed plan which provides for fractional payment of the unsecured claim, and requiring the release of the tax lien under 26 U.S.C. § 6325. *In re Taffi*, 144 B.R. 105 (Bankr.C.D.Cal.1992); *see also In re Bellamy*, 962 F.2d 176 (2d Cir.1992). The Court concludes that the Plan does not impermissibly treat the secured claim of the Internal Revenue Service in violation of *Dewsnup*.

8. The Plan complies with all requirements of Bankruptcy Code § 1129(a), except paragraph (8). The Plan complies with the applicable requirements of Bankruptcy Code § 1129(b)(1), and should be confirmed.

9. The objections of the Internal Revenue Service, the Mobile County Revenue Commissioner, and the Alabama Department of Revenue to confirmation of the Plan should be overruled.

*Order*

It is therefore ORDERED as follows:

1. The Debtors' Third Amended Plan of Reorganization dated November 24, 1995 is hereby CONFIRMED, subject to the conditions contained in Paragraphs 49 and 50 herein with respect to the Debtors' waiver of the statute of limitations contained in I.R.C. § 6502 and the modification to Article 6 of the Plan with respect to default.

2. The reorganized Debtors shall file with the office of the United States Bankruptcy Administrator, P.O. Box 3083, Mobile, Alabama 36652, an initial post-confirmation report within 60 days after the effective date, and quarterly reports thereafter until further order of the Court. The initial report shall reflect any progress made in consummating the Plan during the period covered by the report. The reports shall include: (a) a statement of distribution by class, name of creditor, date of distribution and amount paid; (b) a statement of transfer of property; and (c) a statement of affirmation that the provisions of the Plan are being substantially complied with.

3. The Court retains jurisdiction of this Chapter 11 case and proceedings therein including, without limitation, jurisdiction over all disputes in respect to the following matters:

A. To consider amendments and modifications of the Plan;

B. To hear and determine objections to claims;

C. To hear and determine causes of action by or against the Debtors arising prior to the commencement of or during the pendency of these proceedings;

D. To hear and determine any dispute or controversy arising out of interpretation or enforcement of this Plan;

E. To hear and determine applications for allowance of compensation and reimbursement of expenses;

F. To hear and determine any and all pending applications, adversary proceedings and litigation matters; and

G. To grant extensions of any deadlines set forth herein.

4. The objection of the Internal Revenue Service to confirmation of the Plan is without merit, and the objection is overruled.

5. The objections to confirmation filed by the Mobile County Tax Commissioner and the Alabama Department of Revenue are overruled.

6. The August 18, 1995 order is amended so as to reflect that the recorded notices of federal tax liens have a first priority lien position on the Debtors' homeplace with respect to the Secor Bank mortgage lien.

7. The motions of the Internal Revenue Service for relief from stay and to dismiss this case are denied.