**In re Joseph T. EGAN, Jacqueline Martin Egan, Debtors.**

**Bankruptcy No. 91–10203S.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 27, 1992.

Alan L. Frank, Philadelphia, Pa., for debtors.

David E. Fraimow, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Meridian Bank.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

Before this court in the instant joint Chapter 11 individual consumers' bankruptcy case is the issue of whether we can confirm the Debtors' Amended Plan of Reorganization ("the Plan"), pursuant to 11 U.S.C. § 1129(b), in light of the rejection of the Plan by the Debtors' unsecured creditors. We conclude that we can.

JOSEPH T. EGAN and JACQUELINE MARTIN EGAN ("the Debtors") filed this bankruptcy case pursuant to Chapter 13 of the Bankruptcy Code on January 10, 1991. Meridian Bank ("Meridian") and the Standing Chapter 13 Trustee moved to dismiss the case on the ground that the Debtors' indebtednesses to Meridian exceeded the debt limit imposed by 11 U.S.C. § 109(e). These indebtednesses arose from the Debtors' personal guarantees in the amount of $350,000 for debts of Trison Associates, a defunct ex-manufacturer of railroad car seat-locking devices formerly owned by the Husband–Debtor ("the Husband"). In response to this Motion, the Debtors moved to convert this case to a Chapter 11 case.

On October 8, 1991, no opposition having been raised, the case was in fact so converted.

On March 25, 1992, the Debtors filed a Chapter 11 Plan of Reorganization and accompanying Disclosure Statement. By Order of May 27, 1992, the Disclosure Statement was approved; ballots and objections to the Plan were to be filed by July 2, 1992; a voting report was due on July 9, 1992; and the confirmation hearing was scheduled on July 15, 1992.

The Debtors made peace with Meridian by granting it a second mortgage on their former residence, which they have retained as a rental property, in the amount of $35,000, to be liquidated over 15 years at a rate of one (1%) percent over the "National Commercial Rate." The Debtors' first mortgages on their former and present residences and certain tax liabilities were also to be paid in full under the Plan. But no payments were to be made to unsecured creditors.

Meridian voted to accept the Plan. However, four of five unsecured creditors voting rejected the Plan. Since the class of unsecured creditors was deemed to have rejected the Plan because no payments were made to its members, 11 U.S.C. § 1126(g), the vote of the one unsecured creditor who accepted the Plan not only was puzzling, but also was irrelevant.

However, no Objections to confirmation were filed. At the confirmation hearing, in which the Debtors sought to have the plan confirmed under 11 U.S.C. § 1129(b), no objecting parties appeared, and only the Husband took the stand. He stated that he was presently employed as a sales representative by Power Rail Corp., earning about $40,000 annually from this employment. He also testified that he had begun a new railroad-oriented sales business, United Products, Inc. ("United"), from which he projected annual earnings of $4,000 to $8,000. The Wife–Debtor has been continuously employed as a reservation manager at a Holiday Inn, and presently earns an annual salary of $29,000.

The Husband also presented a list of the Debtors' present property holdings. The Debtors' present home was valued at $190,-000 and said to be subject to a mortgage of $177,831. The Debtors' former home was valued at $104,000 and was said to be subject to a mortgage of $71,914, plus Meridian's $35,000 mortgage. This property generated net rents of about $600 monthly, $355 of which were paid to Meridian. A 1987 Volvo automobile, valued at $4,000, was allegedly subject to a lien and exemptions equal to that amount. Cash of $325 and a $1,000 value attributed to United were claimed as exempt under 11 U.S.C. § 522(d)(5). In sum, although the Debtors planned to retain all of the property held by them, they claimed all of it as exempt.

Apparently believing that it would enhance the Debtors' prospect for confirmation, the Husband offered, in the course of the hearing, to amend the Debtors' plan to reflect an immediate payment of $1,000, to be distributed *pro rata* to their unsecured creditors. This payment will obviously be nominal, because the Debtors' unsecured creditors, exclusive of Meridian, are owed about $100,000, according to their Schedules.

This court recently had occasion to discuss the circumstances in which individual consumer Chapter 11 debtors can "cram down" a plan rejected by a class of unsecured creditors, pursuant to 11 U.S.C. § 1129(b), in *In re Harman*, 141 B.R. 878 (Bankr.E.D.Pa.1992). In that decision, we questioned whether several of the policy reasons for recognizing a "new value exception" to the "absolute priority rule" set forth in 11 U.S.C. § 1129(b)(2)(B) applied in a consumer bankruptcy case. *Id.*, at 886–87. *Compare In re 222 Liberty Associates*, 108 B.R. 971, 983–85 (Bankr.E.D.Pa. 1990) (new value exception recognized in context of a business case). Without deciding whether the new value exception could ever be applied in such a context, we held, in *Harman*, that we were obliged to carefully scrutinize the *Harman* debtors' fulfillment of all pertinent Code requirements. *Id.* at 888. Ultimately finding that the *Harman* debtors' proposed living expenditures of over $32,000 monthly, which would exhaust their income, were too lavish, we denied confirmation of their proposed plan on the basis of 11 U.S.C. §§ 1129(a)(3) and

(b)(1). *Id.* at 888–90. However, we accorded the *Harman* debtors an opportunity to (preferably) attempt to negotiate a resolution with their creditors, or to propose an amended plan which reflected at least some measure of "belt-tightening."

There is, however, one very significant difference between *Harman* and the instant case. In *Harman,* the Debtors' plan proposed their retention of non-exempt property in the amount of $166,000, as well as their exempt property. *Id.* at 881. It is only because of this factor that we became concerned about the application of the absolute priority rule in that case. *Id.* at 885. This is because, if debtors intend to retain only *exempt* property, then they are merely retaining that which is their absolute right to retain in any event, and they are not, properly speaking, receiving or retaining "any interest that is junior to the interests" of any class of creditors, 11 U.S.C. § 1129(b)(2)(B), including the class of unsecured creditors.

■ The Debtors have claimed that all of their property is exempt. No objections to their exemptions claimed were timely filed. *See* Federal Rule of Bankruptcy Procedure 4003(b). Therefore, no objections to those exemptions can now be recognized, and the Debtors' claim of exemptions of all of their property is conclusively established. *See Taylor v. Freeland & Kronz,* —— U.S. ——, ——–——, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992).

■ Therefore, it appears that no impediment to confirmation of the Debtors' plan presents itself. This conclusion is not dependent on the Debtors' offer to pay $1,000 to their creditors. The only effect of that offer is to eliminate the "deemed rejection" of the plan under 11 U.S.C. § 1126(g). However, unless a new vote would be requested and would come out differently than the last vote, the rejection of the Plan by the unsecured creditors, if not automatic, is still very real.

■ We do not mean to suggest, by the foregoing analysis, that confirmation of the Debtors' Plan, over the objection of unsecured creditors, is automatic simply because they have not retained non-exempt property. Creditors could have objected to any aspect of the plan. And, even in the absence of any objection to confirmation, this court retains an independent duty to satisfy itself that all of the criteria of 11 U.S.C. § 1129 are satisfied before confirming a plan. *See In re Richard Buick, Inc.,* 126 B.R. 840, 846 (Bankr.E.D.Pa.1991). However, it is not our role to become a "grand inquisitor" and attempt to conjure up every potential objection to confirmation which could have been raised. *Id.* The absence of objections to confirmation is therefore an important factor in determining whether to confirm the instant Plan.

In *Harman* we refused to confirm the Debtors' plan because we felt that the debtors had not made a sufficient financial commitment to satisfy the "good faith" requirement of 11 U.S.C. § 1129(a)(3), or to establish that they had treated all of their creditors, including unsecured creditors, "fairly and equitably," as required by 11 U.S.C. § 1129(b)(1).

■ The instant Debtors are hardly impoverished. Their total annual income totals about $80,000. They have no dependent children. *Compare, e.g., In re Capodanno,* 94 B.R. 62, 66 (Bankr.E.D.Pa. 1988) (family of nine survives an income of about $21,500 annually); and *In re Navarro,* 83 B.R. 348, 350 (Bankr.E.D.Pa.1988) (family of four, which had income of about $15,000 annually, challenged for "lavish" religious donations). However, their income is less than one-fifth of that projected by the *Harman* Debtors. While we could have conceivably sustained a stiff challenge to the reasonability of the Debtors' budget, we do not consider their lifestyle to be inherently lavish, such that we are prepared to *sua sponte* declare their plan violative of 11 U.S.C. §§ 1129(a)(3) or (b)(1). *Compare In re Hines,* 723 F.2d 333, 334 (3d Cir.1983) (nominal Chapter 13 plan payments to unsecured creditors do not constitute lack of good faith); and *In re Gathright,* 67 B.R. 384, 387–88 (Bankr.E.D.Pa. 1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987) (in the context of 11 U.S.C. § 1325(a)(3) of Chapter 13, lack of good faith refers only to serious debtor misconduct in the bankruptcy proceeding itself).

We do believe however, that, to be found to be treating unsecured creditors "fairly and equitably," a showing comparable, although less demanding, than that required by 11 U.S.C. § 1325(b)(1)(B) is necessary.

Especially in light of the fact that the Debtors have amended their Plan to make at least a nominal payment to unsecured creditors, we are unwilling to find that any bars to confirmation appear here. As in Chapter 13, *see Hines, supra,* we do not believe that a zero-payment plan as to unsecured creditors is inherently objectionable if the Debtors lack the means to make payments to such creditors. We are not prepared to find, noting the lack of objections to confirmation and considering the instant record, that the Debtors do not lack the means to treat unsecured creditors better than they have in the Plan.

We will therefore enter an Order confirming the Debtors' Plan.