### In re Thomas FROSS and Melinda S. Fross, Debtors.

### Bankruptcy No. 94–21906–11.

United States Bankruptcy Court, D. Kansas.

April 29, 1998.

William E. Metcalf, Metcalf & Justus, Topeka, KS, for Debtors.

Eric C. Rajala, Overland Park, KS, for MJPB, Inc.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

Under Bankruptcy Code § 1129(b)(2)(B), a plan of reorganization can be confirmed over the objection of a class of creditors if it is fair and equitable to that class. A plan is not fair and equitable to a class of unsecured claims if it allows a junior class of claims or interests to retain any property without paying the unsecured class in full. When Thomas and Melinda Fross filed for Chapter 11 relief, they claimed their residence as an exempt homestead.[2] In their reorganization plan, they proposed to retain their exempt residence without paying unsecured claims in full. The residence had become encumbered by a first mortgage and an undersecured second mortgage held by separate creditors. The first mortgage holder voted for the plan, but the second mortgage holder, whose claim was bifurcated under § 506(a), voted its unsecured deficiency claim against the plan. Is this plan fair and equitable to the unsecured claims class? The Court holds that the plan is fair and equitable to that class and can be confirmed because retaining exempt property does not violate the absolute priority rule.[3]

### Background

Some confusion abounds on claim amounts. In the pretrial order, the parties stipulated to the secured and unsecured amounts of MJBP's claim: "The debtors' plan calls for the bifurcation of the MJBP [sic], Inc. claim into an allowed secured claim of $18,983, with the balance of the claim (in the amount of $37,334) to be treated as a general unsecured claim."[4] Federal Home Loan Mortgage Corporation holds a $25,662.87 first mortgage on the residence. MJPB's second mortgage claim is stated to be $56,317. The

1. Debtors appears by their attorney, William E. Metcalf of Metcalf and Justus, Topeka, Kansas. MJPB, Inc., appears by its attorney, Eric C. Rajala, Overland Park, Kansas.

2. They also claimed personal property exempt.

3. The parties have stipulated in the pretrial order that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper; that all necessary and indispensable parties are joined; and that the

Court may try this adversary proceeding to final judgment. The Court finds independently of the stipulation that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

4. Final Pre–Trial Conference Order filed August 6, 1996, at 2.

Frosses valued their residence in their schedules at $40,000. With these numbers, the Frosses' equity in the residence, which is MJPB's secured claim, would calculate to $14,337.13, rather than the stipulated $18,983 figure. The Court will assume the stipulated amounts are correct. Therefore, since MJPB did not elect § 1111(b)(2) treatment, it holds a second mortgage secured claim of $18,983 and an unsecured deficiency claim of $37,334.

The stipulation, coupled with MJPB's position, removes the troublesome case of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), from consideration. This United States Supreme Court decision held that a Chapter 7 debtor could not strip down a secured claim to the value of the collateral as ostensibly permitted by § 506(a) of the Bankruptcy Code. MJPB did not argue that *Dewsnup* applies to this case. Rather, its objection to confirmation focused solely on the absolute priority rule. In reply to MJPB's absolute priority argument, however, the Frosses argued that *Dewsnup* is inapplicable in a Chapter 11 case such as this. No where in the pretrial order, or in its reply memorandum, does MJPB reply to that argument. Therefore, in light of the stipulation and MJPB's silence, the Court proceeds on the assumption that MJPB's secured claim is stripped down to the value of the collateral under § 506(a) and that the balance of its claim is unsecured.

Mrs. Fross derives approximately $1,000 per month income from caring for children in the exempt residence. Mr. Fross earns approximately $1,698 per month net from his employment. The plan proposes to pay $176.95 monthly on MJPB's secured claim over 20 years, including interest at 9.5 percent per annum. MJPB does not object to this payment treatment per se. The plan proposes to pay the *unsecured creditors 10 percent on their claims over 10 years with 12 percent* interest. The Frosses will make the plan payments from their future earnings.

Federal Home Loan Mortgage Corporation, the first mortgage holder, voted to accept the plan.[5] MJPB, Inc., the second mortgage holder, voted its unsecured deficiency claim to reject the plan.

## Absolute Priority Rule

The absolute priority rule developed in corporate insolvencies, not those of individuals. It began in pre-Code equity receivership cases of insolvent railroads as a judicial effort to prevent railroad insider stockholders from colluding with friendly secured creditors to prevent unsecured creditors from sharing in the value and control of the enterprise. The rule thwarts this practice by requiring that the plan pay senior creditor classes in full before junior classes or equity interest holders can be paid anything or retain any control of the company. The rule recognizes that under applicable contract law unsecured creditors of an insolvent corporation are entitled to full payment from the company assets before equity holders can share in those assets. But when the insolvent is an individual entitled to exempt property, a new factor is introduced that was not present when the rule first emerged.[6]

■ Congress codified the absolute priority rule in the present § 1129(b). Under this statute, the rule applies to all Chapter 11 cases, whether they are initiated by corporations, partnerships, or individuals. Under the rule, a court can confirm a reorganization plan over the objection of an impaired dissenting class of claims or interests only if the plan is fair and equitable to that class.[7] Applying the rule to a class of unsecured creditors, § 1129(b)(2)(B) declares a plan fair and equitable to that class if it pays the class in full. If the plan pays the class less than in full, the court can declare the plan fair and equitable only if no junior class of claims or interests receives or retains any property:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements: . . . .

---

5. Final Pre–Trial Conference Order filed August 6, 1996, Stipulation C, at 3.

6. Chapters 1, 3, and 5 of the Code apply to all Chapters, Section 522 grants individuals exemptions. Thus, individual chapter 11 debtors may exempt property from their bankruptcy estates.

7. 11 U.S.C. § 1129(b)(1).

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

## Authorities

Since the enactment of § 1129(b)(2)(B)(ii), the courts, including the Tenth Circuit, have recognized that an interest in "any property" in the bankruptcy estate includes the residual interest of an individual proprietor as well as that of a stockholder or a partner.[8] But few courts have addressed whether the absolute priority rule prevents cram down when the individual debtor in Chapter 11 retains exempt property only.

In what is apparently the first Code case to address this question, *In re Johnson,* the Florida bankruptcy court applied the absolute priority rule by broadly construing the terms "any property" found in the statute.[9] That plan proposed the debtor would retain property exempt under state law. Although conceding that the exempt nature of the property still permitted compliance with § 1129(a)(7)'s best-interest-of-creditors test, the court held that by retaining exempt property, the debtor violated the absolute priority rule. Premising its conclusion on the meaning of "any property" in the statute, the court announced:

The term "property" includes all property in which the Debtor has a cognizable, legal or equitable interest on the date of the commencement of the case. The absolute priority rule clearly states that the debtor may not retain "any property" unless the creditors who are senior to the ownership interest receive full satisfaction of their allowed claims.[10]

In the second case following this approach, *In re Ashton,* the debtor proposed to retain both exempt and non-exempt property.[11] When non-exempt property is retained, there is no doubt that the absolute priority rule applies. But the *Ashton* court applied the rule to exempt property as well, saying: "Section 1129(b)(2)(B)(ii) says that a debtor may not retain any property without qualification. There is no distinction between exempt and non-exempt property."[12]

The only case this Court has found ruling that the absolute priority rule does not apply to exempt property is *In re Egan.*[13] *Egan* permitted cram down where individual debtors proposed to retain only exempt property. But the court offered no explanation for its decision beyond the conclusory statement that exempt property is not subject to the absolute priority rule.[14]

## Kansas Exemptions

Since Kansas has opted out of the federal exemption scheme as allowed by § 522(b)(1), exemptions in Kansas bankruptcy cases depend on state law. When the Frosses filed bankruptcy and claimed their residence and personal property exempt under that law, no one objected. The property has remained exempt and unassailable.[15] Under their plan, any remaining non-exempt property in the estate will be sold and the proceeds applied in the plan, or if the non-exempt property is encumbered, it will be returned to the secured creditor.

---

**8.** *Unruh v. Rushville State Bank,* 987 F.2d 1506, 1507–8 (10th Cir.1993).

**9.** *In re Johnson,* 101 B.R. 307 (Bankr.M.D.Fla. 1989).

**10.** *Id.* at 309 (footnote omitted).

**11.** *In re Ashton,* 107 B.R. 670 (Bankr.D.N.D. 1989).

**12.** *Id.* at 674.

**13.** *In re Egan,* 142 B.R. 730 (Bankr.E.D.Pa. 1992).

**14.** *Id.* at 733.

**15.** *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

### Property-of the Estate, or of the Debtor

■ The Bankruptcy Code distinguishes between property of the debtor and property of the estate. Under § 362(a)(2), a creditor may not pursue property of the estate once the case is filed without obtaining relief from the automatic stay. And under § 362(a)(5), a creditor may not perfect a lien on *property of the debtor* for a debt that arose before the filing of the case without obtaining relief from the stay. Under § 363(b), *property of the estate* may be used, sold, or leased by the Chapter 11 debtor-in-possession. The distinction has significance under § 522(b), which states expressly: "[A]n individual debtor may exempt from *property of the estate* the property listed in either paragraph...." With one exception, the Code is otherwise silent about using property of the individual debtor in the reorganization process. This exception appears in § 1123(c). It prohibits a plan proponent other than the debtor from using exempt property in its proposed plan:

> In a case concerning an individual, a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of property exempted under section 522 of this title, unless the debtor consents to such use, sale, or lease.[16]

Under this statute, once an uncontested claim of exemption takes property outside the bankruptcy estate, the property cannot be used in a plan without the individual debtor's consent. Have the Frosses waived their right to keep their exempt property outside the estate?

A fair reading of the plan does not so indicate. The plan provides that the Frosses will retain their exempt property as their own, not as estate property:

> B. Retention of Assets: The Chapter *Debtors shall retain their property and assets,* subject to the security interests of the holders of secured claims, except as otherwise provided in the Plan; provided, however, that upon completion of the Plan,

all security interests of the secured creditors shall be released.[17]

This language says nothing about returning exempt property to the bankruptcy estate for use in the plan. Rather, it asserts the Frosses' intention to keep their exempt property free from the claims of unsecured creditors.

■ While presumably the Frosses will devote some of Mrs. Fross's child care earnings to plan payments, their plan is silent on the source of those plan payments. Perhaps those payments will be derived solely from Mr. Fross's earnings. In any event, under § 541(a)(6) future earnings are also not property of the estate of an individual Chapter 11 debtor. Therefore, the use of the exempt residence to produce income devoted to plan payments would not support an argument that such use should draw the exempt residence back into the bankruptcy estate.

The Frosses argue that Kansas exemption law frees their exempt residence from the claims of unsecured creditors. They point to Article 15, § 9, of the Kansas Constitution, which in excellent nineteenth century language supports their position:

> A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by a family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: Provided, That provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife .... [18]

This constitutional exemption has been implemented by Kansas Statute Annotated 60–2301.

---

**16.** 11 U.S.C. § 1123(c).

**17.** Plan of Reorganization filed February 15, 1995, at 12 (emphasis added).

**18.** Kansas Constitution, Art. 15, § 9.

The Frosses further point to the early Kansas Supreme Court decision of *Colby v. Crocker* in which the Court emphasized the sanctity of the homestead:

By our constitution and statutes the most sedulous care has been manifested to secure the homestead of the debtor and to his wife and family, as against all debts not expressly charge upon it. *As was said in the case of* Monroe v. May, *(9 Kas. 476,)* "*the homestead is something toward which the eye of the creditor need never be turned.* It is an element which may never enter into his calculations in his efforts to collect his debt. He may as well ignore that, as he does now (except in cases of fraud) the body of the debtor." [19]

Thus, the unsecured creditors lack, and have always lacked, even before the Frosses filed bankruptcy, any right to expect payment of their claims from homestead property.

■ Since the Kansas homestead laws exempt the residence from the claims of unsecured creditors, the Frosses contend they are not holders of property interests junior to unsecured claim holders.[20] Rather, they argue that their interest in exempt property is senior and superior to that of unsecured creditors. Therefore, they reason, their interest in exempt property cannot be viewed as a junior interest upon which § 1129(b)(2)(B)(ii) can operate. This being the case, according to their argument, the plan is consistent with the absolute priority rule.[21]

The Court agrees. In this case, the absolute priority rule focuses on a junior property interest, not a claim:

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value,

as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any ... *interest* that is junior to the claims of such class will not receive or retain under the plan on account of such junior ... *interest* any property.[22]

Under the rule, the junior interest holder must not receive or retain any property under the plan on account of such junior interest unless the unsecured class is paid in full. This plan does not pay the unsecured class in full, so a junior interest holder cannot receive or retain any property. But, before this part of the rule can apply, the interest of the receiving or retaining holder must be junior to that of the claims of the unsecured class.

If the Frosses' residence were property of the estate, their interest in it would be junior to the claims of unsecured creditors since applicable law would entitle those creditors to payment from the value of the residence. But since the Frosses' interest in their residence is outside the bankruptcy estate, and unsecured creditors cannot reach its value, their interest in the residence cannot be fairly characterized as junior to the claims of unsecured creditors.

While the Frosses own a valuable property interest, that interest is outside the bankruptcy estate. And under Kansas law, it has never been subject to the claims of unsecured creditors. The Frosses have not received nor retained any property on account of their interest being junior since that interest has always been, even before bankruptcy, superior to and free from the claims of unsecured creditors. The absolute priority rule is not violated and the plan is fair and equitable to unsecured creditors.

Accordingly, the reorganization plan is confirmable under § 1129(b)(2)(B), provided the debtors can show the Court that they have met all other requirements of § 1129(a), excluding, of course, § 1129(a)(8).

19. *Colby v. Crocker,* 17 Kan. 527, 531 (1877) (emphasis added).

20. Memorandum of Debtors Thomas and Melinda Fross In Reply To The Objection of MJPB, Inc. To Confirmation of Debtors' Amended Plan filed March 4, 1996, at 2.

21. *Id.* at 8.

22. *11 U.S.C. § 1129(b)(2)(B) (emphasis added).*

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52(a). A judgment reflecting this ruling shall be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed. R.Civ.P. 58.

IT IS SO ORDERED.