**In re Abraham David GOSMAN, Debtor.**

**No. 01–30953–BKC–PGH.**

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division.

July 30, 2002.

Paul J. Battista, Miami, FL.

Charles W. Throckmorton, Miami, FL.

*MEMORANDUM DECISION AND OR-
DER SUSTAINING THE OBJEC-
TION BY THE OFFICIAL COM-
MITTEE OF UNSECURED
CREDITORS TO CONFIRMATION
OF THE DEBTOR'S AMENDED
CHAPTER 11 PLAN BY MEANS
OF CRAMDOWN*

PAUL G. HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on June 5, 2002 upon one of the objections raised by the Official Committee of Unsecured Creditors (the "Committee") to the approval of the Debtor's Amended Disclosure Statement. The specific issue before the Court (the "Cramdown Issue") concerns the Debtor's ability, as a matter of law, to confirm his Amended Plan of Liquidation (the "Debtor's Plan") by means of cramdown under 11 U.S.C. § 1129(b)(2)(B)(ii) without contributing all of his exempt property under such Plan.

The Court, considering the arguments of the parties, the Memorandum of Law by the Committee in Support of Its Objection to Confirmation of The Debtor's Amended Chapter 11 Plan by Means of Cramdown Under Section 1129(b) of The Bankruptcy Code, the Memorandum of Law filed by the Debtor in connection with the Cramdown Issue, the record and pleadings filed in this case and otherwise being fully advised in the premises, hereby makes the following findings of fact and conclusions of law.

### FINDINGS OF FACTS

On March 2, 2001, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Committee was formed by the Office of the United States Trustee on April 9, 2001. Thereafter, the meeting of creditors, pursuant to 11 U.S.C. § 341, was held on April 19, 2001.

Under the Debtor's Plan, the Debtor proposes to liquidate all of his non-exempt assets for the benefit of his creditors and at the same time partially retain his interests in several items of valuable exempt property, including without limitation, a mansion on the ocean in Palm Beach, Florida valued on the Debtor's schedules at $40 million, a collection of artwork valued on the Debtor's schedules at approximately $11 million, a valuable collection of antique furniture and an interest in a corporation

that owns a piece of undeveloped real property in Palm Beach valued on the Debtor's schedules at $7.5 million (collectively, the "Exempt Property").

Under the Debtor's Plan, the Debtor would retain the Exempt Property, but would contribute the proceeds from a portion thereof to the unsecured creditors, the amount of which depended on certain conditions under the Debtor's Plan. The Cramdown Issue arises because the Debtor's Plan did not provide that the Debtor would contribute *all* of the Exempt Property to pay unsecured creditors.

On March 13, 2002, the Court conducted a hearing on the approval of the competing disclosure statements filed by the Debtor and the Committee. In connection with such hearing, the Committee filed an extensive objection to the Debtor's disclosure statement. The Debtor also filed an extensive objection to the Committee's disclosure statement. In the Committee's objection, the Committee raised several issues concerning the legal structure of the Debtor's Plan and argued that because the Committee believed that the Debtor's Plan was not confirmable on its face, the Debtor's disclosure statement should not be approved.

At the March 13, 2002 hearing, the Court resolved certain of the objections raised by both parties to the other's disclosure statement, but instructed the parties to submit legal memoranda on the Cramdown Issue, namely, whether the Debtor, who does not propose to pay all of his unsecured creditors in full under the Debtor's Plan, was able, as a matter of law, to confirm the Debtor's Plan, which is a plan of liquidation, by means of a cramdown under Section 1129(b) of the Bankruptcy Code over a dissenting class of unsecured creditors while at the same time retain some or all of the Exempt Property.

In its pleadings on the Cramdown Issue, the Committee objected to the Debtor's Plan on the ground that it violated the absolute priority rule under the Bankruptcy Code. The Committee argues that the Debtor's attempt to retain Exempt Property under the Debtor's Plan is not authorized by the plain language of the Bankruptcy Code, namely Section 1129(b)(2)(B)(ii), or the case law thereunder unless the Debtor is able to obtain the acceptance of the class of unsecured creditors under the Debtor's Plan.[1] Thus, according to the Committee, the Debtor cannot confirm the Debtor's Plan by means of cramdown under Section 1129(b)(2)(B)(ii) of the Bankruptcy Code unless he contributes all of the Exempt Property to the Debtor's Plan for the benefit of creditors on the basis that the Debtor's retention of any property (even Exempt Property) would constitute a violation of the absolute priority rule.

The Debtor disagrees with the Committee and argues that there is ample case law supporting the proposition that a debtor may retain exempt property via the cramdown provisions of the Bankruptcy Code. The Debtor also relies on bankruptcy policy, arguing that an unfavorable ruling would deny individual debtors effective relief under Chapter 11.

### *CONCLUSIONS OF LAW*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b),

---

1. Because of the composition of the Committee, whose members potentially hold allowable unsecured claims in excess of $210 million, and the pendency of the Committee's plan of liquidation, it is unlikely that the Debtor will obtain the acceptance of the class of unsecured claims, which is an impaired class under the Debtor's Plan. Therefore, confirmation of the Debtor's Plan is probably only possible through the cramdown provisions of the Bankruptcy Code.

157(b)(1) and 157(b)(2)(L). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(L).

■ In order to obtain confirmation of a Chapter 11 plan, a debtor must meet the requirements of 11 U.S.C. § 1129(a). In connection therewith and subject to the exception contained in Section 1129(a)(8), all impaired classes under the plan must vote in favor of and accept the plan. In the event one impaired class votes to reject the plan, then the debtor is left with the alternative of achieving confirmation of the plan through the means of the cramdown provisions of 11 U.S.C. § 1129(b). In order to achieve a cramdown against a dissenting class of unsecured creditors, a debtor must satisfy the "fair and equitable" requirement of Section 1129(b)(2)(B)(ii) as to such dissenting class of unsecured creditors. This section provides:

> With respect to a class of unsecured creditors—
>
> . . .
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest **any property**.

(emphasis added). As such, if unsecured creditors do not receive payment in full on their allowed claims, then no holder of a claim or interest junior to those of the unsecured creditors may retain any property under the plan. This provision is commonly referred to as the "absolute priority rule."

■ There can be no question that the Debtor in this case is a "holder of an interest that is junior" to the claims of unsecured creditors. The Debtor owns an interest in the Exempt Property. *See In re Unruh v. Rushville State Bank*, 987 F.2d 1506 (10th Cir.1993); *In re East*, 57

B.R. 14 (Bankr.M.D.La.1985). Further, it is "generally held that a debtor's ownership interest in property is 'junior' to the claims of unsecured creditors." *In re Fross*, 233 B.R. 176, 1999 WL 26886 *9, 1999 Bankr.LEXIS 15, *26 (10th Cir. BAP 1999)(unpublished decision); *See also In re Drimmel*, 108 B.R. 284 (Bankr.D.Kan. 1989); *In re Knutson*, 40 B.R. 142 (Bankr. W.D.Wis.1984); *In re Tomlin*, 22 B.R. 876 (Bankr.M.D.Ala.1982). Lastly, the Debtor is proposing to retain property, namely Exempt Property, on account of such junior interest. In fact, it is the Debtor's "ownership interest in the home that gives [him] any exemption rights under [Section] 522(b) and [state] law at all." *Fross*, 233 B.R. 176, 1999 WL 26886 at *9, 1999 Bankr.LEXIS at *25.

## I. The Plain Language of § 1129(b)(2)(B)(ii)

As a result of the above, the core dispute in this matter centers on whether the term "any property" as used in Section 1129(b)(2)(B)(ii) encompasses property which is "exempt property." The Committee contends that the statutory section is clear and unambiguous on its face and therefore should be afforded its plain meaning. The Court agrees.

■ The interpretation of the Bankruptcy Code first begins with the language itself. *See In re Griffith*, 206 F.3d 1389, 1393 (11th Cir.2000); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). If the language is plain and unambiguous, then the Court must enforce the Bankruptcy Code according to its terms. *Id.*

■ Here, the Court looks no further than the words "any property." The term "property," while not defined under the Bankruptcy Code, is meant to be broad in scope and all encompassing. *See Norwest Bank of Worthington v. Ahlers*, 485 U.S.

197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("as that term is used in § 1129(b) ... Congress' meaning was quite broad."). No distinction is made between intangible and tangible property. In addition, no distinction is also made between valuable and valueless property.

Notwithstanding this lack of distinction, the Debtor would have this Court conclude that Congress intended to make a distinction between exempt and non-exempt property in Section 1129(b)(2)(B)(ii) when it chose to use the word "property." The Debtor's position is simply not supported by the four corners of the text in Section 1129(b)(2)(B)(ii). *See In re Fross,* 233 B.R. 176, 1999 WL 26886, 1999 Bankr.LEXIS 15 (10th Cir. BAP 1999); *In re Ashton,* 107 B.R. 670, 674 (Bankr. D.N.D.1989); *Matter of Yasparro,* 100 B.R. 91, 95 (Bankr.M.D.Fla.1989); *In re Johnson,* 101 B.R. 307, 309 (Bankr. M.D.Fla.1989).

In the context of an individual Chapter 11 proceeding, there is no dispute that if the Debtor were to retain certain *property of the estate,* i.e., non-exempt property, then the Debtor would be in violation of the absolute priority rule if the dissenting class of unsecured creditors are not paid in full because he would be the holder of a "junior interest" retaining property at the expense of unsecured creditors. *See Ahlers,* 485 U.S. at 209, 108 S.Ct. 963 (individual debtors' retention of their interests in the non-exempt family farm was improper). The foregoing result is no different where the Debtor proposes to retain exempt property as opposed to non-exempt property.

Had Congress intended to exclude exempt property from the effect of the "absolute priority rule," then the term "property" would not have been used under Section 1129(b)(2)(B)(ii), rather Congress would have used "non-exempt property" or "property of the estate." Congress could also have used any other qualifying word to indicate its desire to provide a distinction between exempt and non-exempt property. For example, Congress could have referenced 11 U.S.C. § 522 if it meant to exclude exempt property. Instead, Section 1129(b)(2)(B)(ii) uses the term "property" and such term is modified by the word "any," a word which, by any definition, sets no boundaries. "Any" does not refer to certain things and not others. "Any" means "every" and "all." It is unlimited. By having the word "any" modify "property," there is no reason, or implication, whatsoever to support the Debtor's argument that Section 1129(b)(2)(B)(ii) is limited to non-exempt assets.

In fact, the Supreme Court in *Bank of America National Trust and Savings Assoc. v. 203 North LaSalle Street Partnership,* 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999) concluded that the word "property" as used in Section 1129(b)(2)(B)(ii) was broad enough to cover even the exclusive opportunity to propose a plan in a Chapter 11 bankruptcy. *Id.* at 455, 119 S.Ct. 1411. As such, it is certainly broad enough to cover exempt property.

## II. Structure of the Bankruptcy Code

In drafting the Bankruptcy Code, Congress was meticulous with its choice of words. This is demonstrated through the use of the phrase "property of the estate," which is repeatedly used throughout the Bankruptcy Code. In Sections 541, 1207 and 1306 of the Bankruptcy Code, all appropriately entitled "Property of the Estate," Congress defined what it meant by the term "property of the estate." As such, Congress leaves no doubt that a reader of the Bankruptcy Code must refer to these sections whenever "property of the estate" is used in other provisions.

Given the foregoing construct, the omission of any reference to "property of the estate" in Section 1129(b)(2)(B)(ii) can only mean one thing, namely that the omission was intentional by Congress. If Congress had intended to limit the term "any property" to "property of the estate", it would have done so. There can be no doubt that Congress knew the difference. Accordingly, the Court must give effect to each and every word chosen by Congress, as well as to each and every omission.

The Supreme Court in *203 North La-Salle Street Partnership* was faced with a similar task of statutory construction in interpreting Section 1129(b)(2)(B)(ii). There, the Supreme Court had to determine the meaning of the term "on account of." Disagreeing with the debtor's reading that "on account of" means "in exchange for," the Supreme Court stressed that the phrase "in exchange for" already appears in Section 1123(a)(5)(J). The Supreme Court stated: "It is unlikely that the drafters of legislation so long and minutely contemplated as the 1978 Bankruptcy Code would have used two different forms of words for the same purpose." *LaSalle*, 526 U.S. at 450, 119 S.Ct. 1411. Simply put, Congress does not choose words in a vacuum. The same can be said in the present case, where Congress chose the term "any property," instead of "property of the estate." There is no reason to believe that the Supreme Court in *LaSalle* would rule differently in this context, especially where the term "property of the estate" is used abundantly throughout the Bankruptcy Code. "Any property" is simply not equivalent to "property of the estate."

### III. Legislative History

While Chapter 11 is a publicly perceived form of bankruptcy relief for companies, Congress made Chapter 11 equally avail- able for individuals. Therefore, Congress was fully aware of the impact that the "absolute priority rule" may have on an individual debtor at the time Section 1129(b)(2)(B)(ii) was drafted. Only an individual debtor can exempt property. Had Congress intended to protect an individual's right to exempt property, the "absolute priority rule" would have been made inapplicable to such property.

The foregoing result is further bolstered by the legislative history behind the "absolute priority rule." *In re Fross* provides an excellent discussion on this topic, illustrating how and why the provisions of Section 1129(b)(2)(B)(ii) were enacted by Congress. 233 B.R. 176, 1999 WL 26886 at *3–5. To summarize, the "absolute priority rule" was once a creature of common law, which prohibited an individual or corporate debtor from retaining property, no matter the form. Because Congress believed that this rule was frustrating bankruptcy policy, the Bankruptcy Act, when amended in 1952, was modified to exclude the application of the "absolute priority rule" in all bankruptcy cases, including those involving individual debtors. Thus, for a significant period of time, the "absolute priority rule" played no role under the then applicable bankruptcy law. However, the "absolute priority rule" came into existence through the enactment of the Bankruptcy Code in 1978.

*Fross* concluded that Congress' decision in 1978 in making the "absolute priority rule" applicable to both individual and corporate Chapter 11 cases was not inadvertent or a mere scrivener's error. Citing to *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the court explained that Congress is presumed to know of former practices, in particular the former law exempting individuals from the "absolute priority rule." *Id.* at *5. The court went on to rule that such an exten-

sive history shows, in addition to the plain meaning of the term "any property," that the "absolute priority rule" is not limited to property of the estate by of virtue an individual debtor utilizing the Chapter 11 provisions.

Although *Fross* is an unpublished opinion, the analysis set forth in that decision is extensive and compelling. If this Court were to conduct a similar investigation on the history of the "absolute priority rule," the result would be the same. The language of Section 1129(b)(2)(B)(ii) is plain, clear and unequivocal, and legislative history does not suggest otherwise.

## IV. The Debtor's Case Law Supporting His Argument.

The Debtor has cited five cases in support of his contention that the "absolute priority rule" does not extend to exempt property. *See In re Haas*, 195 B.R. 933 (Bankr.S.D.Ala.1996); *In re Rocha*, 179 B.R. 305 (Bankr.M.D.Fla.1995); *In re Harman*, 141 B.R. 878 (Bankr.E.D.Pa. 1992); *In re Egan*, 142 B.R. 730 (Bankr. E.D.Pa.1992); and *In re Custer*, 1993 WL 7965, 1993 Bankr.Lexis 20 (E.D.Pa. January 7, 1993).

Of the five cases, three were decided by the Honorable David A. Scholl, U.S. Bankruptcy Judge for the Eastern District of Pennsylvania. The fact that Judge Scholl in three separate occasions stated that the "absolute priority rule" only applies to a debtor's retention of non-exempt assets does not make the Debtor's argument in this case any more persuasive or correct. In fact, the issue at hand was only addressed and discussed at some length by Judge Scholl in *Egan*. Judge Scholl's statements in *Harman* and *Custer* were purely dicta, involving conclusory statements. *Harman* and *Custer* add nothing to the analysis of whether the term "any property" incorporates exempt property.

The same can be said of *Rocha*, which merely states: "[S]ince the unsecured creditors have rejected the Plan, the Debtors must pay their claims in full, before they retain any non-exempt property." The issue of exempt property was not before the Court in *Rocha*, mainly because the Chapter 11 debtor there sought to retain his interest in non-exempt property, as opposed to exempt property. As a result, *Rocha* is not persuasive authority.

What remains are the discussions in *Egan* and *Haas*. There, both courts provide the same explanation by focusing on the nature of exempt property. According to them, because the retention of exempt property is an absolute right already afforded to a debtor by way of 11 U.S.C. § 522, the "absolute priority rule" does not come into play. Essentially, the argument is that Section 522 trumps Section 1129(b)(2)(B)(ii). *See Egan*, 142 B.R. at 733; *Haas*, B.R. at 941.

What *Egan* and *Haas* fail to recognize, however, is that Section 522 is a provision of general applicability pursuant to 11 U.S.C. § 103. It is a canon of statutory construction that provisions of general applicability within a statute prevail, unless they are contradicted by or are inconsistent with a specific provision. *See In re McKeon*, 86 B.R. 350, 376 (Bankr.D.N.J. 1988) ("This court accepts the tenet of statutory construction which provides that regardless of the inclusiveness of the general language of a statute, it does not apply or prevail over matters specifically dealt with in another part of the same enactment."). Accordingly, the provisions set forth in Section 522 prevail in Chapters 7, 11, and 13, unless otherwise contradicted by a specific provision. Here, the specific provision is Section 1129(b)(2)(B)(ii). As noted, the reference to "any property" means any and all property, including property of the estate. Such a broad term

clearly overrides the mandate of Section 522 or any other provisions relating to exemptions. For *Egan* and *Haas* to ignore the foregoing construct of the Bankruptcy Code calls into question the persuasiveness of these decisions.

Furthermore, the courts in *Egan* and *Haas* did not undertake the thorough analysis that was conducted in *Fross* and *Yasparro*. For whatever reason, perhaps because the issue was not hotly contested by the parties, *Egan* and *Haas* fall short, in particular failing to address the plain meaning of "any property" in Section 1129(b)(2)(B)(ii).

As result of the foregoing, the Court will follow the holdings of those cases cited by the Committee. The Court finds them to be more persuasive in their reasoning.

At the hearing, the Debtor also argued that his position that he could retain the Exempt Property in the context of a cramdown was supported by the provisions of Section 1123(c) of the Bankruptcy Code. Section 1123(c) provides that "[i]n a case concerning an individual, a plan proposed by an entity other than the debtor may not provide for the use, sale, or lease of property exempted under section 522 of this title, unless the debtor consents to such use, sale, or lease." The Court disagrees. In fact, the Court finds that this provision actually supports the position asserted by the Committee in that Congress was clearly aware of the issue of exempt versus non-exempt property under the Bankruptcy Code for an individual debtor and as such could have qualified the term "property" in Section 1129(b)(2)(B)(ii) if it chose to do so.

## V. Consequences of the Absolute Priority Rule

■ Under limited circumstances, the plain meaning of a statute controls unless the language leads to an absurd result.

*See In re Fretz,* 244 F.3d 1323 (11th Cir. 2001). Here, the application of the "absolute priority rule" may prevent an honest individual Chapter 11 debtor from obtaining effective relief through confirmation of a plan. As a result, an individual Chapter 11 debtor may be forced to proceed under Chapter 7. If so, is such a scenario so abhorrent as to justify a rewrite of the clear mandate of Congress?

■ Chapter 7 relief is just as effective as providing adequate relief to a debtor in financial straits, although certain debtors would prefer to proceed under Chapter 11 to retain certain property. It is well established that a discharge of one's debts is a privilege, not a right afforded by Congress. *See Matter of Juzwiak,* 89 F.3d 424 (7th Cir.1996); *In re Broughton,* 6 B.R. 1011 (N.D.Ga.1980). A debtor who voluntary seeks bankruptcy relief must be expected to meet the requirements of the Bankruptcy Code. Here, for the Debtor to obtain a reorganization of his financial affairs, certain conditions of confirmation must be satisfied. *See Fross,* 233 B.R. 176, 1999 WL 26886 at *7. In addition, the Debtor has proposed a plan of liquidation in this case. He has chosen to pursue liquidation in a Chapter 11 rather than in Chapter 7. As a result, he is required to satisfy the requirements of Chapter 11; Section 1129(b)(2)(B)(ii) being one of them.

Just because the Debtor in this case is unhappy with the plain meaning of the "absolute priority rule," this Court should not conclude in favor of an absurd result. As discussed, Congress was well aware of the distinction between exempt and non-exempt property when drafting Section 1129(b)(2)(B)(ii). If the Court were to rewrite the Code every time a debtor was dissatisfied with a specific provision of the Bankruptcy Code, there would be no Bankruptcy Code.

■ Even if the Debtor is correct in arguing that the consequence of the "absolute priority rule" is poor bankruptcy policy, policy arguments cannot displace the plain language of a statute. *Cf. In re TechDyn Systems Corp.*, 235 B.R. 857 (Bankr.E.D.Va.1999). The Court must presume that Congress means what it says and says what it means through the passage of legislation. If bad bankruptcy policy results therefrom, then the Debtor must raise his concerns to another forum that is better equipped in addressing public policy matters, namely, the halls of Congress.

### ORDER

In light of the foregoing, and with the Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that:

1. The Committee's Objection in relation to the Cramdown Issue is **SUSTAINED**.

2. The disclosure statement in relation to the Debtor's Plan is Denied without prejudice.

3. The Debtor cannot confirm a Chapter 11 plan by means of cramdown over a dissenting class of unsecured creditors under Section 1129(b)(2)(B)(ii) of the Bankruptcy Code unless the Debtor's Plan provides for a contribution of all of the Exempt Property to and for the benefit of unsecured creditors.