**In Re John C. DAILEY and Patricia A. Dailey, Debtors.**

No. 02–70737.

United States Bankruptcy Court, C.D. Illinois.

March 13, 2003.

Francis J. Giganti, Springfield, IL, for Debtors.

Wesley T. Kozeny, Creve Coeur, MO, for Commercial Federal Bank.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether the Debtors' proposed Chapter 11 Plan impermissibly modifies an undersecured home mortgage in violation of Section 1123(b)(5) of the Bankruptcy Code.

The material facts are not in dispute. John C. Dailey is a sixty-two year-old doctor practicing in Jacksonville, Illinois. His specialty is ear, nose, and throat. He earns over $400,000 a year. His wife, Patricia A. Dailey, has not been employed outside the home since 1985. They have four adult, emancipated children.

The Daileys filed a petition pursuant to Chapter 11 of the Bankruptcy Code on February 21, 2002. The primary cause of the Debtors' financial problems was the construction of a home located at 1546 Concord Road, Jacksonville, Illinois. The construction costs of the house far exceeded the original construction projections. The home serves as the Debtors' principal residence.

The Debtors' home is an ultra-luxury home that is well constructed out of premium materials. It is located on a five-acre tract. The Debtors built the house for around $750,000. The Debtors valued the home at $1,000,000 in their schedules. However, the house has been on the market and has failed to sell. The asking price has ranged from $995,000 to around $800,000.

The Court held a valuation hearing on June 28, 2002, and determined the fair market value of the house to be $350,000. The Court based its valuation on the lack

of a water source on the five-acre tract (water comes from an adjacent tract also owned by the Debtors), and the limited market for luxury homes in the Jacksonville area. An appraiser testified that luxury homes rarely bring what they cost to build.

The Debtors financed the construction of the house in part through a loan from AmerUs Bank; Commercial Federal Bank is the successor by merger to AmerUs. On June 27, 1997, the Debtors executed a note in favor of the Bank in the principal amount of $727,700 plus interest to accrue thereon at the rate of 9.25% per annum. The note is secured by a mortgage on the house and five-acre tract upon which it sits. In addition, the Debtors' schedules show Conseco as having second and third mortgages on the property totaling $142,000.

The Debtors' Chapter 11 Plan filed July 29, 2002, proposes to treat Commercial as a Class 2 allowed secured claim which is impaired by the Plan. Under the proposed Plan, Commercial's secured claim of $840,598.83 would be "stripped down" to the Court-determined fair market value of the property—$350,000. The Debtors propose to pay the stripped-down claim of $350,000 over 30 years at 7% interest with a five year balloon. Monthly payments would be not less than $2,328.56. The balance of $460,500 would be treated as an unsecured debt.

■ Commercial objects to confirmation of the Chapter 11 Plan on the grounds that it impermissibly modifies Commercial's security claim in violation of 11 U.S.C. § 1123(b)(5), which provides as follows:

> (b) Subject to subsection (a) of this section, a plan may—
>
>     . . . .
>
>     (5) modify the rights of holders of secured claims, other than a claim se-

cured only by a security interest in real property that is the debtor's personal residence. . . .

This provision was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994, and the legislative history clearly indicates the Congressional intent to amend Chapter 11 to include the same anti-modification provision applicable to Chapter 13 plans under § 1322(b)(2) and the Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). *In re Cohen*, 267 B.R. 39, 42 (Bankr.D.N.H. 2001); *In re Lievsay*, 199 B.R. 705, 708–09 (9th Cir. BAP 1996).

In this case, the only collateral subject to the Bank's security interest is the Debtors' principal residence at 1546 Concord Road. Therefore, the Bank's security interest may not be modified by the Chapter 11 Plan of Reorganization.

■ The Debtors argue that the Bank should be estopped from relying on § 1123(b)(5) because it participated in the valuation hearing. This argument is without merit. The Bank has never expressed an intention of waiving any of its rights under the Bankruptcy Code. The Bank did appear at the valuation hearing, but its participation was limited; the Bank did not produce its own appraiser. The Bank was well aware that its mortgage could not be modified. The purpose of the valuation hearing was to determine whether the second and third mortgages were totally unsecured, and therefore subject to strip off. *See In re Waters*, 276 B.R. 879, 888 (Bankr.N.D.Ill.2002).

■ The Debtor also argues that "the provisions of 1123(b)(5) are contrary to the position that bankruptcy should afford a debtor a fresh start in that they substantially impair the ability of a debtor to achieve a fresh start by being overbur-

dened with debt associated with the one asset that they need to retain." Section 1123(b)(5) may be harsh, and the Debtor may be unhappy with the anti-modification rule, but it is not optional. "If the Court were to re-write the Code every time a debtor was dissatisfied with a specific provision of the Bankruptcy Code, there would be no Bankruptcy Code." *In re Gosman,* 282 B.R. 45, 52 (Bankr.S.D.Fla.2002).

It is clear from the foregoing that the Debtors' Chapter 11 plan may not be confirmed. Therefore, the Court need not address the Bank's objection pursuant to § 1129(a)(11) that the plan is not feasible and is likely to be followed by liquidation and the need for further financial reorganization. The Court also notes that the Debtors face a substantial obstacle to confirmation in the guise of the absolute priority rule of § 1129(b)(2)(B)(ii). *In re Gosman, supra.* The Court also notes that the Internal Revenue Service filed an Amended Objection to Plan on December 3, 2002.

■ Also pending is the Bank's Motion to Lift the Automatic Stay. The Motion was originally filed on March 20, 2002; an Amended Motion was filed on April 10, 2002. The Motion was continued at the request of the Bank so that it could review the Debtors' Plan and Disclosure Statement. The Bank has reasserted its request for a modification of the automatic stay in its reply brief filed February 26, 2003.

The Bank argues that the automatic stay should be lifted pursuant to 11 U.S.C. § 362(d)(2) on the grounds that the Debtor does not have any equity in the property and that the property is not necessary to an effective reorganization. The Bank has the burden of showing that the Debtors do not have any equity in the property, and the Debtors have the burden of proving that the property is necessary to an effec-

tive reorganization. 11 U.S.C. § 362(g). It is undisputed that the Debtors do not have any equity in the property. Thus, the only issue with respect to the Bank's request for relief from the automatic stay is whether the property is necessary to an effective reorganization of the Debtors.

The property does not generate any income, and there are no plans to use it to generate any income. The primary purpose of the Chapter 11 filing was to save the home for the Debtors as their residence. The Debtors' proposed Chapter 11 Plan of Reorganization is based upon the bifurcation and modification of the Bank's secured claim. The Debtors stated in their brief in opposition to the Bank's objection to confirmation that, if the Bank's mortgage cannot be modified as set forth in the proposed Chapter 11 Plan of Reorganization, then the Debtors would want to amend their plan to provide for liquidation by them. Since the Court has determined that the Bank's mortgage may not be modified by a Chapter 11 plan, an effective reorganization is not possible.

The question then becomes whether to lift the stay to allow the Bank to proceed with foreclosure or to allow the Debtors to liquidate the house in an amended Chapter 11 plan. Given that the Debtors had the house on the market for over three years without any success, the Debtors' failure to make payments to the Bank during the pendency of these proceedings, the growing post-petition arrearage, and the value of the property, the Court finds that the Bank is not adequately protected and that the stay should be lifted.

For the foregoing reasons, confirmation of the Debtor's Chapter 11 Plan of Reorganization is denied, and Commercial Federal Bank's Amended Motion for Relief from the Automatic Stay is allowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.